UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| JOSUÉ ROBERTO MONGE, | ) | Case No. 15-792 |
| EMILY COATES MONGE, | ) | |
| DAVID ROY MANDEL, and | ) | |
| BEATRICE FRANCINE MANDEL, | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT—CLASS** |
| | ) | **ACTION** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC., A New Jersey Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiffs Josué Roberto Monge, Emily Coates Monge, David Roy Mandel and

Beatrice Francine Mandel ("Plaintiffs"), individually and on behalf of all others similarly

situated (the "Class"), allege the following:

I.    **FACTUAL ALLEGATIONS**

1.    The United States Government, through the Environmental Protection

Agency, has passed and enforced laws designed to protect United States citizens from

pollution and in particular, certain chemicals and agents known to cause disease in humans.

Automobile manufacturers must abide by these US laws and must adhere to EPA rules and

regulations.  Defendant Volkswagen Group of America ("Volkswagen") purposefully and

intentionally breached the laws of the United States and the rules and regulations of the

EPA by selling in the United States vehicles manufactured by its affiliates Volkswagen AG

1

and Audi AG that purposefully evaded federal and state laws. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health." Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi diesel vehicles.[1]

2.     As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

3.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the

---

[1] *See* Sept. 18, 2015 EPA News Release.

elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

4.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.  Under federal law, cars equipped with defeat devices, which reduce the effectiveness of the emissions control system during normal driving conditions, cannot be certified.  By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

5.     According to the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"):  MY 2009-2015 VW Jetta; MY 2009-2014 Jetta Sportwagen; MY 2012-2015 VW Beetle; MY 2012-2015 VW Beetle Convertible; MY 2010-2015 VW Golf; MY 2015 Golf Sportwagen; MY 2012-2015 VW Passat; and MY 2010-2015 Audi A3.  Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

6.     Volkswagen expressly marketed and advertised its CleanDiesel models as extraordinarily clean, EPA certified in all 50 states, and powerful.  For example, the

3

following promotional material was used in 2010, and similar materials have been used across the spectrum of models using the CleanDiesel engine system.[2]

7.  Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel."  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780.  The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860.  The CleanDiesel premium for the highest trim Jetta model is substantially higher.  The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

8.  These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing.  The table below sets forth the price premium for each base, mid-level and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

---

[2] *See* Burn rubber, not money article.

9. Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their Affected Vehicles.

10. On September 20, 2015, Volkswagen admitted that the EPA allegations were true. It admitted using a "defeat device" in the Affected Vehicles. Its CEO Martin Winterkorn stated: "I personally am deeply sorry that we have broken the trust of our customers and the public."

11. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property. Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Affected

5

Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

12.     Plaintiffs bring this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities (the "Class" or "Class Members") who own or lease or who have owned or leased a 2009-2015 Volkswagen or Audi diesel-powered vehicle which contained software specifically designed to avoid and cheat EPA test standards.

## II.     JURISDICTION

13.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.    VENUE

14.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

Moreover, Volkswagen has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV. PARTIES

### A. North Carolina Plaintiffs

**1. The Plaintiffs Josué Roberto Monge and Emily Coates Monge, are citizens and residents of Guilford County, North Carolina, and purchased a 2012 Volkswagen Jetta with a CleanDiesel engine in the year 2012.**

**2. The Plaintiffs David Roy Mandel and Beatrice Francine Mandel, are citizens and residents of Guilford County, North Carolina, and purchased a 2015 Volkswagen Jetta with a CleanDiesel engine in the year 2015.**

15. Plaintiffs Josué Roberto Monge and Emily Coates Monge are residents of the State of North Carolina. In 2012, they purchased a new 2012 Volkswagen Jetta from an authorized Volkswagen dealer in Greensboro, North Carolina. Plaintiffs David Roy Mandel and Beatrice Francine Mandel purchased a new 2015 Volkswagen Jetta from the same dealer. Plaintiffs purchased and still own these vehicles. Unknown to Plaintiffs, at the time the vehicles were purchased, they were equipped with an emission control "defeat device" which caused the vehicles to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Volkswagen has caused Plaintiffs out-of-pocket loss, future attempted repairs, and diminished value of their vehicles. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiffs, so Plaintiffs purchased their vehicles on the reasonable, but mistaken,

belief that their vehicles complied with United States emissions standards, was properly EPA certified, and would retain all of their operating characteristics throughout their useful lives.

### B. Defendant

16.     Volkswagen Group of America, Inc., is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names throughout the United States.  Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device."  Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

17.     Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device."  It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part.  As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing

8

on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

18.     Within the time period of any applicable statutes of limitations, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of its vehicles.

19.     Plaintiffs and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiffs and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with

regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

20.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

## B.     Fraudulent Concealment Tolling

21.     All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

22.     Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

## C.     Estoppel

23.     Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

24.     Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

25.     Volkswagen was also under a continuous duty to disclose to Plaintiffs and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that is systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean. Air.

26.     Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VI.     CLASS ALLEGATIONS

27.     Plaintiffs brings this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2014 VW Jetta Sportwagen; MY 2012-2015 VW Beetle; MY 2012-2015 VW Beetle Convertible; MY 2010-2015 VW Golf; MY 2015 VW Golf Sportwagen; MY 2012-2015 VW Passat; and MY 2010-2015 Audi A3.

**The North Carolina Subclass**

All persons or entities in the state of North Carolina who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2014 VW Jetta Sportwagen; MY 2012-2015 VW Beetle; MY 2012-2015 VW Beetle Convertible; MY 2010-2015 VW Golf; MY 2015 VW Golf Sportwagen; MY 2012-2015 VW Passat; and MY 2010-2015 Audi A3.

28.     Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system.  Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.  Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

29.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

30.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

31.     <u>Numerosity</u>:  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs were informed and believe that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notices.

32.  <u>Commonality and Predominance</u>:  Federal  Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)   Whether Volkswagen engaged in the conduct alleged herein;

b)   Whether  Volkswagen  designed,  advertised,  marketed, distributed, leased, sold or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c)   Whether the   CleanDiesel  engine  system  in  the  Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements;

d)   Whether the CleanDiesel engine systems in Affected Vehicles can  be  made  to  comply  with  EPA  standards  without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e)   Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

f)   Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

g)   Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h) Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

i) Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j) Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what manner.

33. <u>Typicality</u>: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

34. <u>Adequacy</u>: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

35. <u>Declaratory and Injunctive Relief</u>: Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

36.     Superiority:   Federal Rule of Civil Procedure 23(b)(3):   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the Classes to individually seek redress for Volkswagen's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.   Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.    VIOLATIONS ALLEGED

### A.    Claims Brought on Behalf of the Nationwide Class and the North Carolina Subclass Under North Carolina Law

### COUNT I
### VIOLATIONS OF THE NORTH CAROLINA UNFAIR
### AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. GEN. STAT. §§ 75-1.1, *et seq.*)

37.     Plaintiffs Josué Roberto Monge, Emily Coates Monge, David Roy Mandel and Beatrice Francine Mandel ("Plaintiffs," for purposes of all North Carolina Class

Counts) incorporates by reference all of this allegations of the Complaint as though fully set forth herein.

38.     Plaintiffs bring this Count on behalf of the North Carolina Subclass.

39.     North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. GEN. STAT. § 75-16.

40.     Volkswagen's acts and practices complained of herein were performed in the course of Volkswagen's trade or business and thus occurred in or affected "commerce," as defined in N.C. GEN. STAT. § 75-1.1(b).

41.     In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel Engine System was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above.  Accordingly, Volkswagen engaged in unlawful trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

42.     Volkswagen's conduct proximately caused injuries to Plaintiffs and the other Class members.

43.     Volkswagen acted with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the other Class members to cruel and unjust hardship as a result, such that an award of punitive damages is appropriate.

44.     Plaintiffs and the other Class members were injured as a result of Volkswagen's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value, and other damages as described in this Complaint.   These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

45.     Plaintiffs, individually and on behalf of the other Class members, seek treble damages pursuant to N.C. GEN. STAT. § 75-16, and an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT II
## BREACH OF CONTRACT
### (Based on North Carolina Law)

46.     Plaintiffs incorporate by reference all of the allegations of this Complaint as though fully set forth herein.

47.     Plaintiffs bring this Count on behalf of the Nationwide Class and North Carolina Subclass.

17

48.     Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiffs and the other Class member to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

49.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine system.

50.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, recision and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT
### (Based on North Carolina Law)

51.     Plaintiffs reallege and incorporate by reference all of the allegations of this Complaint as though fully set forth herein.

52.     Plaintiffs bring this Count on behalf of the North Carolina Class.

53.     Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiffs' and the other Class members' information that is highly relevant to their purchasing decision.

54.     Volkswagen further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

55.     Volkswagen knew these representations were false when made.

56.     The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

57.     Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions

functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiffs and the other Class members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

58.     The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Affected Vehicles at the prices they paid.

59.     The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements.  Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

60.     Plaintiffs and the other Class members relied on Volkswagen's reputation – along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that is Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

61. As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

62. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members. Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

63. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles. As alleged in this Complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

64.     Plaintiffs and Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

65.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen – one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales about the trust that Plaintiffs and Class members placed in it representations.  As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "CleanDiesel" vehicle buyers, "I don't want to be spewing noxious gases into the environment."

66.     Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles,

that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that is vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

67.     Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonable discoverable by Plaintiffs or Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information

to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this – except that, secretly, Volkswagen had subverted the testing process thoroughly.

68. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

69. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

70. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the

24

concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

71. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emission qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

72. The value of Plaintiffs' and Class Members' vehicles had diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the

Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. To the extent repairs to the vehicle reduce mileage obtained, then such a reduction in mileage as misrepresented constitutes damages for the extra cost of fuel.

73.     Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

74.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.  To the extent permitted under applicable law Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

75.     The Defendants made false representations and concealed material facts, which were reasonably calculated to deceive, and were made with the intent to deceive, and which did in fact deceive the Plaintiffs, resulting in damage to the Plaintiffs. Plaintiffs plead this count pursuant to the law of North Carolina, on behalf of all members of the Nationwide Class.  As necessary, and in the alternative, Plaintiffs stand ready to plead sub-classes, based on the residences at pertinent times of members of the Nationwide Class, to allege fraudulent concealment under the laws of states other than North Carolina.

## COUNT IV
## PUNITIVE DAMAGES

76.     Plaintiffs incorporate by reference all of the allegations of this Complaint as though fully set forth herein.

77.     Pursuant to Section 1D of the North Carolina General Statutes, the Defendants conduct constitutes fraud, malice, and/or willful or wanton conduct to allow and award of punitive damages.

78.     The Plaintiffs are entitled to punitive damages against the Defendant in an amount not to exceed three times the amount of compensatory damages, or $250,000.00, whichever is greater, pursuant to North Carolina G.S. § 1D-25.

## COUNT V
## NEGLIGENT MISREPRESENTATION

79.     Plaintiffs incorporate by reference all of the allegations of this Complaint as though fully set forth herein.

80.     To the extent of the actions of the Defendants can be couched in their failure to use reasonable care or competence in obtaining or communicating the information regarding the vehicles and the CleanDiesel engines and its performance, then the Defendants are obligated to pay damages to the Plaintiffs for negligent misrepresentation under the law in North Carolina.

81.     The Defendants supplied information to the Plaintiffs regarding the nature of the vehicles, the Defendants intended for the Plaintiff's to rely on that information in purchasing the vehicles, the information provided by the Defendants was false, and the Defendants failed to use reasonable care and competence in obtaining or communicating the information. The Plaintiffs actually relied upon the information of the Defendants in purchasing the vehicles for the prices they paid, and for the performance expectations

27

thereof, and such reliance has caused financial damages to the Plaintiffs as described herein.

82.    Furthermore, the truth was not otherwise obtainable by the Plaintiffs, due to the concealment and the nature of the product and the inability of the Plaintiffs to test for the defects in the product manufactured by the Defendant.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.    Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiffs' counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Costs, restitution, damages, including punitive damages, recision, and disgorgement in an amount to be determined at trial;

E.    An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F.    An award of costs and attorneys' fees; and

G.    Punitive damages pursuant to Chapter 1D; and

H.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED:  September 24, 2015


/s/ Paul D. Coates_____
Paul D. Coates
N.C. State Bar # 9753
Jon Ward
N.C. State Bar # 37122
Adam L. White
N.C. State Bar # 46495
Attorneys for Plaintiffs
PINTO COATES KYRE & BOWERS, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone:  (336) 282-8848
Facsimile:  (336) 282-8409
pcoates@pckb-law.com
jward@pckb-law.com
awhite@pckb-law.com



Joseph F. Rice
Jodi Westbrook Flowers
Kevin R. Dean
Elizabeth C. Elsner
N.C. State Bar # 26617
Attorneys for Plaintiffs
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
jrice@motleyrice.com
jflowers@motleyrice.com
kdean@motleyrice.com

29